IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRAD SANDEFUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VILLAGE OF HANOVER PARK, ILLINOIS, RONALD CRAIG, Individually and as President of Hanover Park, RONALD MOSER, Individually and as Village Manager of Hanover Park, THOMAS CORTESE, Individually and as Deputy Chief of Police of Hanover Park, MARK GATZ, Individually and as Deputy Chief of Police of Hanover Park, JOHN DOE HANOVER PARK POLICE OFFICERS, | ) ) ) ) No. 10 C 5851 ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On February 1, 2011, plaintiff Brad Sandefur ("Sandefur") filed his First Amended Complaint against defendants Village of Hanover Park ("Village"), Ronald Craig ("Craig"), Ronald Moser ("Moser"), Thomas Cortese ("Cortese"), and Mark Gatz ("Gatz") (collectively "Defendants"), bringing claims for violations of his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I); "supervisory refusal/neglect to properly instruct, supervise, control and discipline" also under § 1983 (Count II); and false light under Illinois law (Count III). (Dkt. No. 23 ("1st Am. Compl.") ¶¶ 23-50.)

Now pending before the court is "Defendants' Motion to Dismiss Plaintiff's Complaint" (Dkt. No. 14 ("Defs.' Mot.")). For the reasons set forth below, Defendants' Motion is granted in

part and denied in part as further explained in this opinion.

## BACKGROUND[1]

When reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and construes all reasonable inferences in the plaintiff's favor. *Golden v. Helen Sigman & Assocs.*, 611 F.3d 356, 360 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The following are the facts of this case viewed in the light most favorable to Sandefur.

Sandefur is a resident of the Village and works at the Cook County jail as a sergeant in the Cook County Sheriff's Department. (1st Am. Compl. ¶¶ 5, 12.) As a law enforcement officer, Sandefur carries a firearm with him when he is both on- and off-duty in accordance with the Law Enforcement Officer's Safety Act, 18 U.S.C. § 926B. (*Id.* ¶ 12.)

The Village is a village in Illinois. (*Id.* ¶ 6.) At the time of the events in question, Craig was the President of the Village's Board of Council ("Board") and a Village employee. (*Id.* ¶ 7.) As President of the Board, Craig was responsible for "monitor[ing], restrict[ing] and control[ling]" the Village Manager and the Village police. (*Id.*) Moser was the Village Manager and was responsible for the day-to-day operations of the Village including appointing all department heads. (*Id.* ¶ 9.) Cortese was the Village's Deputy Chief of Police in charge of the Village's Support Services. (*Id.* ¶ 10.) Gatz was also employed by the Village as the Deputy

---

[1] In his First Amended Complaint, Sandefur routinely refers to the "Defendants," including the Village, collectively. The parties respective briefs do not further clarify whether certain claims only apply to certain defendants, and Defendants have not argued that this failure to distinguish between the Defendants is a basis for dismissing Sandefur's claims. For purposes of ruling on Defendants' Motion, the court, where possible, has distinguished Sandefur's claims against the Village from those against the individual defendants, but generally makes no other distinction among the Defendants.

Chief of Police in charge of Operations. (*Id.* ¶ 11.)

On February 4, 2010, Sandefur attended the Board's monthly meeting at the Village hall (*id.* ¶ 13), and was carrying his firearm (*id.* ¶¶ 12, 15). Craig, Moser, Cortese, Gatz, and several of Sandefur's neighbors and acquaintances were also present at the meeting. (*Id.* ¶¶ 13, 15, 19.) At the meeting, Sandefur made a presentation to the Board regarding a water flow and icing problem that was occurring near his home in the Village. (*Id.* ¶¶ 13-14.) Sandefur "approach[ed] the area directly in front of the raised table of the [Board] and . . . place[d] his exhibit photographs depicting the extent of the problem in front of [the Board] for review and evaluation." (*Id.* ¶ 14.) During his presentation, Sandefur raised his hands, which exposed his holstered gun. (*Id.* ¶¶ 14-15.) Several Village officers then grabbed Sandefur and physically restrained him. (*Id.* ¶ 15.) The officers told Sandefur that they "had observed a holster which they believed contained a weapon under [Sandefur's] clothing." (*Id.*) Sandefur attempted to identify himself as a law enforcement officer, and Lori Kaiser ("Kaiser"), a member of the Board, announced to the room that Sandefur was in fact a law enforcement officer. (*Id.*) Several officers nevertheless removed Sandefur from the meeting room and restrained him. (*Id.*) Sandefur's neighbor, Paul Lussky ("Lussky"), also was removed from the meeting. (*Id.* ¶ 17.)

After Sandefur was taken outside the meeting room, the officers forcibly removed the handgun from Sandefur's holster. (*Id.* ¶ 16.) Sandefur attempted to show Defendants[2] his law enforcement identification but was unable to do so because the officers continued to restrain him. (*Id.*) Eventually, one of the officers removed Sandefur's identification from Sandefur's pocket

---

[2] Again, because Sandefur's First Amended Complaint refers to the Defendants collectively, the court cannot discern which individual defendants were physically present with Sandefur outside the meeting room.

and gave it to Defendants. (*Id.*) Moser spent a few minutes inspecting Sandefur's identification and then instructed the officers to release Sandefur and return his gun. (*Id.*)

Moser subsequently allowed Lussky to return to the meeting but prohibited Sandefur from re-entering the meeting. (*Id.* ¶¶ 17-18.) Moser told Sandefur that "[Sandefur] could not come back in [the meeting] since he had already caused enough of a disturbance"; "he could come back to the next meeting if he wanted to make any further presentation but that he would be arrested for trespass if he did not leave [the Village hall] immediately"; and "he would be arrested for trespass if he ever tried to bring his gun into a [Village] meeting again." (*Id.* ¶ 18.) Sandefur informed Defendants of his right to carry a firearm but left the premises after he was denied re-entry to the meeting. (*Id.*)

After speaking with Sandefur, Moser returned to the meeting and stated that "[Sandefur] appeared to be a correctional officer, possessed a gun and a badge, and had been removed from the building." (*Id.* ¶ 19.) Craig subsequently "thanked the police for being observant, chuckled about the matter and the meeting continued." (*Id.*) When Lussky attempted to clarify the situation, Craig "stopped him" and said, "I don't want to know." (*Id.*) The Daily Herald newspaper published an article about the incident on or about February 11, 2010. (*Id.*) The article recited the basic facts of the event and stated that Moser acknowledged "that he made the call to bar [Sandefur from re-entering the meeting] and that the officers who removed [Sandefur] handled the situation very well." (*Id.* ¶ 20.)

Several days after the February 4, 2010 meeting, Craig called Sandefur to inform him that the Village would soon repair the icing problem Sandefur addressed at the meeting and that Sandefur need not attend the next Village meeting. (*Id.* ¶ 21.) Sandefur nevertheless "went to

4

the next meeting, but without his gun because he feared arrest, to see what the Defendants would do." (*Id.*) When Sandefur arrived at the next meeting, Cortese asked Sandefur whether he had his gun. (*Id.*) After Sandefur responded that he did not have his gun, Cortese told Sandefur that he could "wear the gun at future meetings." (*Id.*)

On September 15, 2010, Sandefur filed a complaint against Defendants (Dkt. No. 1), and Defendants subsequently filed their Motion to Dismiss on December 3, 2010 (Dkt. No. 14). Sandefur then filed his First Amended Complaint (Dkt. No. 23) on February 1, 2011. In the First Amended Complaint, Sandefur brings claims against Defendants for violations of his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I); "supervisory refusal/neglect to properly instruct, supervise, control and discipline" also under § 1983 (Count II); and false light under Illinois law (Count III). (1st Am. Compl. ¶¶ 23-50.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the complaint need not contain "detailed factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint

5

in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor. *Id.*

## ANALYSIS

I.  Section 1983 Claims (Count I)

Defendants argue that "Count I, which is an amalgam of constitutional violations, i.e. 1st, 4th, 14th Amendment violations, should be dismissed in its entirety." (Defs.' Mot. 3.) Specifically, Defendants contend that the officers did not violate Sandefur's constitutional rights because they had a reasonable suspicion to conduct a *Terry* stop of Sandefur at the February 4, 2010 meeting. Moreover, according to Defendants, if the stop of Sandefur amounted to an arrest, the pleadings demonstrate that Defendants had probable cause to arrest Sandefur. (*Id.* at 6.) Defendants further argue that the individual defendants are each entitled to qualified immunity because no violation of Sandefur's constitutional rights occurred. (*Id.* at 8.) The court will address each of these arguments in turn.

 A.  First Amendment Claims

In Count I, Sandefur brings a claim under § 1983 for violations of his First Amendment rights, stating that Defendants deprived him of "his right to free speech [and] assembly . . . when they physically restrained and removed him from the open meeting of the Board" on February 4, 2010. (1st Am. Compl. ¶ 28.) Despite moving to dismiss Count I "in its entirety" (*see* Defs.' Mot. 3), Defendants do not separately address Sandefur's First Amendment claim in their Motion. Consequently, to the extent Defendants' Motion seeks to dismiss Sandefur's First Amendment § 1983 claim in Count I, the Motion is denied.

B.     Fourth Amendment Search and Seizure Claims

In Count I, Sandefur also alleges that Defendants violated his Fourth Amendment rights by subjecting him to an unreasonable search and seizure. (1st Am. Compl. ¶¶ 27-28.) To state a claim for an unreasonable search and seizure under the Fourth Amendment, Sandefur must demonstrate that he was subject to a search or seizure and that the search or seizure was unreasonable. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).

A person is effectively seized pursuant to the Fourth Amendment if "a reasonable person would have believed that he was not free to leave" in light of the situation's particular circumstances. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The seizure must also involve "an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1998). To state a claim for an unreasonable seizure, a plaintiff must allege either (1) that a police officer conducted an investigatory stop without a reasonable suspicion that the plaintiff "has or was about to commit a crime," *United States v. Bullock*, 632 F.3d 1004, 1011 (7th Cir. 2011) (quoting *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009)); or (2) that a police officer arrested the plaintiff without probable cause, *Mucha v. Vill. of Oak Brook*, No. 10-2000, 2011 WL 489617, at *2 (7th Cir. Feb. 14, 2011).

As the Seventh Circuit has explained, "officers may conduct an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Reasonable suspicion is "a commonsense, nontechnical concept that deals with the factual and practical considerations of 'everyday life on which reasonable and prudent [people], not legal technicians, act.'" *Id.* (alterations in original) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)).

Probable cause, in contrast, is a more demanding standard. *Id.*

> Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."

*Mucha*, 2011 WL 489617, at *3 (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). When making the probable cause determination, "the court steps into the shoes of a reasonable person in the position of the officer." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008).

"The distinction [between a *Terry* investigatory step and a formal arrest] hinges on the intrusiveness of the detention, which is a 'flexible and highly fact-intensive' inquiry." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) (citation omitted) (quoting *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004)). "A *Terry* stop based on reasonable suspicion can ripen into a de facto arrest that must be based on probable cause if it continues too long or becomes unreasonably intrusive." *Bullock*, 632 F.3d at 1015.

Here, viewing the factual allegations in Sandefur's First Amended Complaint in the light most favorable to Sandefur, this court finds that Sandefur has pleaded sufficient facts to state a Fourth Amendment claim based on either an unreasonable investigatory stop or a false arrest.[3] Specifically, Sandefur claims that despite both his attempts to identify himself as a law

---

[3] Although Sandefur's First Amended Complaint does not explicitly allege that Sandefur was "falsely arrested," it does state that Sandefur was falsely imprisoned. (1st Am. Compl. ¶¶ 15, 28.) Because "[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error," *Rabé v. U. Air Lines*, 636 F.3d 866, 872 (7th Cir. 2011), by alleging that the officers' actions amounted "a false imprisonment of [Sandefur] in violation of his constitutional . . . rights" (1st Am. Compl. ¶ 15), this court finds that Sandefur has sufficiently placed Defendants on notice that he may be pursuing a Fourth Amendment false arrest claim.

8

enforcement officer and Village Board Member Lori Kaiser's acknowledgment that Sandefur was in fact a law enforcement officer, Defendants nevertheless proceeded to "physically restrain[] and remove[] him from the open meeting of the Board." (1st Am. Compl. ¶ 28.) They then "searched him, falsely imprisoned him, seized both his weapon and his identification and prevented his return to the meeting." (*Id.*) Determining the reasonableness of this stop, whether the stop ultimately ripened into a de facto arrest, and, if so, whether the officers had probable cause for an arrest, all present factual questions the court cannot resolve at this preliminary stage of the proceedings. Thus, Defendants' Motion as it relates to the Fourth Amendment claim in Count I against the individual defendants is denied.

C. Section 1983 Claim Against the Village

To the extent that Count I purports to bring a § 1983 claim against the Village, however, that claim is dismissed. Under § 1983, a municipality is not liable for constitutional violations based on a respondeat superior liability theory. *Waters v. City of Chi.*, 580 F.3d 575, 584 (7th Cir. 2009) ("A municipality can be held liable under § 1983 only if culpable; it cannot be held liable under respondeat superior."). Instead, a municipality is only liable for such violations under the circumstances outlined by the U.S. Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Here, Sandefur's *Monell* claim against the Village is alleged in Count II, not Count I. Consequently, Count I, insofar as it applies to the Village, is dismissed.

D. Qualified Immunity

In the alternative, Defendants contend that the individual defendants are entitled to qualified immunity against Sandefur's allegations. (Defs.' Mot. 7-9.) "Qualified immunity protects public officials in those situations where the law is not sufficiently clear for a reasonable

official to have known that his actions were illegal." *Phelan v. Vill. of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008). In determining whether qualified immunity applies, the court considers "whether a constitutional right has been violated," and "whether the right was clearly established at the time the official acted." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

In their Motion, Defendants argue specifically that qualified immunity applies to the individual defendants in this case because "there was no violation of the Plaintiff's 4th Amendment rights." (Defs.' Mot. 8.) Having already determined that Sandefur has sufficiently stated a claim under § 1983 based on a violation of his Fourth Amendment rights, Defendants' qualified immunity objection to this case proceeding is overruled.

II.     Section 1983 "Supervisory Refusal/Neglect to Properly Instruct, Supervise, Control and Discipline" (Count II)

Sandefur claims in Count II that the individual defendants and the Village should be held liable for "fail[ing] and refus[ing] to establish proper policies and procedures governing the conduct and control of meetings and to instruct, supervise, control and discipline subordinate defendants for failing and refusing to permit [Sandefur] to attend an open V[illage] meeting as an off duty law enforcement officer with a concealed weapon." (1st Am. Compl. ¶ 37.)

As an initial matter, the court notes that Defendants' Motion does not address whether Sandefur has stated a claim against certain individual defendants based on a theory of supervisory liability. Thus, to the extent Defendants seek to dismiss Sandefur's claims in Count

II against certain individual defendants, that Motion is denied.

Regarding Sandefur's *Monell* claim against the Village in Count II, for a municipality to be held liable under *Monell*, the alleged constitutional violation must be caused by "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Here, Defendants do not contend that Sandefur has failed to allege an injury caused by an express policy, widespread practice, or person with final policymaking authority. Instead, they repeat their argument that Sandefur has failed to state a claim for violation of his Fourth Amendment rights and accordingly cannot state claim against the Village under *Monell*. (Defs.' Mot. 8-9.) Again, because this court has already concluded that Sandefur has stated such a claim against certain individual defendants, this argument necessarily fails.[4] Consequently, Defendants' Motion to Dismiss Sandefur's claim against the Village in Count II is denied.

III. False Light Claim (Count III)

Sandefur also brings a claim against Defendants for false light under Illinois law. (1st Am. Compl. ¶¶ 47-49.) To properly plead a false light claim, a plaintiff "must allege that: (1) the defendant's actions placed the plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is,

---

[4] Sandefur's *Monell* claim also implicates the alleged First Amendment violations which Defendants' Motion does not separately address and this court has not dismissed.

11

with knowledge of the falsity of the statement or with reckless disregard for whether the statement was true or false." *Sandholm v. Kuecker*, 942 N.E.2d 544, 559 (Ill. App. Ct. 2010).

Defendants first argue that Sandefur's false light claim against the Village should be dismissed pursuant to § 2-107 of the Tort Immunity Act, which provides:

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-107. Based on the arguments the court can discern from Sandefur's Response, he does not appear to dispute that the Tort Immunity Act prevents him from pursuing damages against the Village. (*See* Dkt. No. 24 ("Sandefur's Resp.") at 9 ("[Sandefur] [s]eeks [d]amages [o]nly [a]gainst [t]he [i]ndividual [d]efendants and [n]ot [t]he Village.").) In his First Amended Complaint, however, Sandefur additionally seeks injunctive relief against the Village. (*See* 1st Am. Compl. ¶ 50(B).) Although Defendants argue that "[t]here is no exception for injunctive relief set forth in 2-107 or any other provision of the Tort Immunity Act" (Dkt. No. 26 ("Defs.' Reply") at 6), based on this court's research, this position is contrary to Illinois law.

In *Pace v. Regional Transportation Authority*, 803 N.E.2d 13, 29 (Ill. App. Ct. 2003), the Illinois Appellate Court explained that "[i]t is well settled that the Tort Immunity Act applies only to tort actions seeking damages and not to actions seeking injunctive relief." Indeed, § 2-101 of the Act explicitly recognizes that "[n]othing in [the Tort Immunity Act] affects the right to obtain relief *other than damages* against a local public entity or public employee." 745 ILCS 10/2-101 (emphasis added); *see also Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 444 (Ill. 2004) (recognizing that under § 2-101 actions seeking "relief other than damages"

are excluded from the Tort Immunity Act). Consequently, although Sandefur cannot seek damages against the Village, the Tort Immunity Act does not prevent Sandefur from seeking injunctive relief. The court expresses no opinion on the ultimate viability of Sandefur's false light claim against the Village because Defendants rely solely on the Tort Immunity Act as the basis for dismissal of that claim.

Regarding the individual defendants, Defendants argue that (1) Sandefur's First Amended Complaint only alleges facts related to defendant Craig and to the extent Sandefur is asserting false light claims against the other individual defendants those claims should be dismissed; and (2) Craig's statements were absolutely privileged because he made them in the context of his duties as a Village official. (Defs.' Mot. 11.) With respect to Defendants' first argument, Defendants' Motion mistakenly attributes the statement in the Daily Herald newspaper to Craig. (*See id.*) To the contrary, in the First Amended Complaint, Sandefur alleges that Moser, not Craig, made the statements to the press. (1st Am. Compl. ¶ 20.) Moreover, based on the court's interpretation of the First Amended Complaint, Sandefur bases his false light claim not only on Moser's statements to the Daily Herald but also on

> [t]he wrongful restraint and removal of [Sandefur] from the Board meeting, the refusal to allow his immediate return, the threat to arrest him for trespass if he did not leave immediately, the threat to arrest him i[f] he later returned with his service weapon and the mischaracterization of his removal from the meeting as appropriate at the meeting . . . .

(*Id*. ¶ 47.) Defendants have not addressed whether these allegations support a false light claim. Nor do Defendants discuss whether Moser's statement to the Daily Herald could provide a basis for such a claim. The court, therefore, finds that Defendants have failed to demonstrate that Sandefur's factual allegations do not state a prima facie claim for false light under Illinois law.

Alternatively, Defendants argue that even if the individual defendants' actions placed Sandefur in a false light, those actions are "absolutely privileged" because those defendants were acting within the scope of their authority. (Defs.' Mot. 11-12.) Absolute privilege protects a public official from liability as a result of statements made when the official was acting within the scope of his authority. *See Klug v. Chi. Sch. Reform Bd. of Trs.*, 197 F.3d 853, 861 (7th Cir. 1999) ("[E]ven if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority." (citing *Blair v. Walker*, 349 N.E.2d 385 (Ill. 1976))). At this stage of the litigation and viewing the factual allegations in the First Amended Complaint in the light most favorable to Sandefur, this court cannot determine as a matter of law that the individual defendants were acting within the scope of their official duties when they allegedly engaged in conduct that Sandefur contends placed him in a false light.[5] Accordingly, Defendants' Motion as it relates to the false light claims in Count III against the individual defendants also is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (Dkt. No. 14) is granted in part and denied in part. Specifically, to the extent that Count I purports to state a *Monell* claim against the Village of Hanover Park, that claim is dismissed. Sandefur, however, may pursue his remaining claims consistent with this opinion. Defendants are to file their Answer or before June 23, 2011. Counsel for all parties are to confer pursuant to Federal Rule of Civil Procedure 23(f)

---

[5] Although Sandefur did not raise this argument, the court notes that "absolute privilege" is an affirmative defense, *see, e.g., Medow v. Flavin*, 782 N.E.2d 733, 742 (Ill. App. Ct. 2002), and generally "it is incorrect to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense," *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006).

and to file a completed Federal Rule of Civil Procedure Form 52 on or before July 7, 2011. A status hearing is set for July 14, 2011, for entering a scheduling order in this case. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 9, 2011