IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRAD SANDEFUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VILLAGE OF HANOVER PARK, ILLINOIS, ) | |
| RONALD CRAIG, Individually and as President ) | |
| of Hanover Park, RONALD MOSER, ) | No. 10 C 5851 |
| Individually and as Village Manager of Hanover ) | |
| Park, THOMAS CORTESE, Individually and ) | |
| as Deputy Chief of Police of Hanover Park, ) | |
| MARK GATZ, Individually and as Deputy ) | |
| Chief of Police of Hanover Park, JOHN DOE ) | |
| HANOVER PARK POLICE OFFICERS, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On February 1, 2011, plaintiff Brad Sandefur filed his First Amended Complaint against defendants the Village of Hanover Park ("Village"), Ronald Craig, Ronald Moser, Thomas Cortese, and Mark Gatz, bringing claims for violations of his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I); "supervisory refusal/neglect to properly instruct, supervise, control and discipline" also under § 1983 (Count II); and false light under Illinois common law (Count III). (Dkt. No. 23 ("1st Am. Compl.") ¶¶ 23-50.) Pending before the court are the parties' cross motions for summary judgment on all counts. (Dkt. Nos. 53, 70.) For the reasons explained below, Sandefur's motion (Dkt. No. 70) is denied and the defendants' motion (Dkt. No. 53) is granted. Judgment will be entered in favor of defendants and the case dismissed.

-1-

BACKGROUND

The Village of Hanover Park Village Board (the "Board") allows members of the public to speak at its meetings for up to five minutes each during a designated portion of the agenda. (Dkt. No. 67 ¶ 11.) On February 4, 2010, Brad Sandefur, a Sergeant with the Office of the Cook County Sheriff and a resident of the Village, attended a regularly scheduled, semi-monthly Board meeting with his neighbor Paul Lussky to address the Board about ice building up on Sandefur's street (Dkt. No. 55 ("ASOF") ¶¶ 7, 13.) Prior to the Board meeting in 2009, the Village had increased security at Board meetings following an incident in Missouri in which several board members and a police officer were killed by a disgruntled resident.[1]

The February 4 meeting was the first Board meeting that Sandefur had ever attended, (ASOF ¶ 9) so none of the defendants recognized Sandefur as a correctional officer (*Id.* ¶¶ 10, 11). Sandefur was wearing jeans, a red and gold nylon jacket with the words "U.S. Marines" on it, and a 9-millimeter Glock handgun in a shoulder holster. (*Id.* ¶¶ 12, 13.) The weapon was concealed behind Sandefur's jacket, but the jacket was not snapped shut. (*Id.* ¶ 15.) The jacket also obscured the Sheriff's badge attached to Sandefur's belt. (*Id.* ¶ 17.)

During Sandefur's presentation, Sandefur approached the board to show photographs. (*Id.* ¶ 16.) Kim Pohl, a reporter for the *Daily Herald* who regularly attends Board meetings, testified that Sandefur became "very animated" while he spoke, lifting up his arms and allowing her to see the

---

[1] Sandefur objects to this statement in his Response to Defendants' Statement of Material Undisputed Facts (Dkt. No. 80 ¶ D8), but does not cite any record evidence to support his objection. It is thus deemed admitted. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial."). Parties are reminded that they must cite to the record to support a Local Rule 56.1(b)(3) denial. Legal arguments or other argumentative answers are not sufficient. *Malec*, 191 F.R.D. at 584.

gun holster. (*Id.* ¶ 19.) At some point, the Village Manager Ron Moser noticed that Sandefur was armed. (*Id.* ¶ 18.) The Fire Chief, who was also present at the meeting, advised Deputy Chief Mark Gatz, an officer with the Village of Hanover Park Police Department, that Sandefur had a gun. (*Id.* ¶ 20.) Gatz advised Sergeant John Dossey that Sandefur had a gun. (*Id.*) Gatz and Dossey then approached Sandefur, secured his arms, and told him that he needed to step away from the podium and come with them. (*Id.* ¶ 21.) Sandefur's neighbor Paul Lussky was also escorted out of the meeting by Moser. (*Id.* ¶ 22.) As Sandefur was being escorted out, he never told any of the officers that he was correctional officer. (*Id.* ¶ 23.) Lori Kaiser, a Village Trustee who was familiar with Sandefur, testified that she probably mentioned to the Trustee sitting next to her that Sandefur is a cop, although the defendants dispute this fact. (Dkt. No. 80 ¶ D1.)

Outside of the meeting, the officers held Sandefur face first against the wall for two to four minutes, searched him, examined his credentials, and removed his weapon. (ASOF ¶¶ 24, 25.) Sandefur was never handcuffed or told he was under arrest. (*Id.* ¶ 26.) Sandefur was "a bit loud" and upset in the hallway.[2] Moser stated that Sandefur was "agitated." (Dkt. No. 80, ¶ D3.) During the detention, Sandefur mentioned that he was in law enforcement. (ASOF ¶ 27.) Sandefur's gun was returned to him (Dkt. No. 80 ¶ D3), but Moser determined that Sandefur would not be allowed to return to the meeting to continue his presentation because of the disturbance he had caused and because it would not be safe to allow him to return with a gun (*Id.*; ASOF ¶ 29). Moser told Sandefur, however, that he could return to the next Board meeting in two weeks. (ASOF ¶ 30.) Deputy Chief Tom Cortese, another officer with the Village of Hanover Park Police Department,

---

[2] (Dkt. No. 80 ¶ D2.) Again, Sandefur objects to this statement, but cites no record evidence, so it is deemed admitted.

then told Sandefur that he needed to leave or he would be arrested for trespassing, and that he would not be able to return to the Board meeting. (*Id.* ¶¶ 33-34.) Sandefur then left. (*Id.* ¶ 35.)

When Moser returned to the Board meeting, he advised the Board that Sandefur had been removed from the meeting, that Sandefur was armed, and that it appeared that Sandefur had a badge.[3] The Village President Ronald Craig, who was presiding over the meeting, thanked the police for their diligence and continued with the meeting. (ASOF ¶ 37.) Lussky, who was allowed to return to the Board meeting, then made his presentation on the same topic Sandefur had just addressed. (Dkt. No. 76 ¶ P20.)

After the meeting, Pohl interviewed Moser. (*Id.* ¶ P23.) According to an article Pohl published in the *Daily Herald* on February 12, 2010, "Moser said he made the call to bar Sandefur because the incident was disruptive and his issue could be heard by the board two weeks later." (Dkt. No. 69.) The article also noted that "Moser said the officers handled the situation very well."

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] (ASOF ¶ 36.) The entire exchange, which was recorded and then transcribed, reads as follows:

| | |
|---|---|
| Craig: | Ron? |
| Moser: | Yeah, we're removing this gentleman and the police are checking it out. There is a badge, but there may be a weapon, so he's being removed at this time and they'll figure it out. |
| Craig: | Okay. |
| Moser: | Okay? |
| Craig: | Yeah. |
| Moser: | He advised he's a correctional officer, but we don't know. |
| Craig: | All right. Thank you for being observant. I'm sure that we'll have another meeting tat [sic] he can come speak to. |

(Dkt. No. 84 ¶ D9.)

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

ANALYSIS

The parties have agreed on the majority of the facts in this case and, as explained below, there is no genuine dispute about any of the material facts. The case is thus a good candidate for determination on summary judgment.[4]

I.  Count I: § 1983 Claims[5]

"Section 1983 creates a federal cause of action for the 'deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United

---

[4] As an initial matter, the defendants have moved to strike Sandefur's "Reply to Defendants' Response to Sandefur's 'Statement of Additional Material Facts." (Dkt. No. 88.) As the defendants contend, the local rules do not provide for a reply to a response to a statement of material facts. *See* L.R. 56.1. Moreover, Sandefur's reply misses the point of the 56.1 procedure, because it consists largely of legal arguments about the relevance of the asserted facts or contentions about the inferences to be drawn from them. Such material should appear in a party's briefs, not in a 56.1 statement. *See Malec*, 191 F.R.D. at 585 ("The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument.") Accordingly, the defendants' motion to strike (Dkt. No. 88) is granted.

[5] Sandefur brings these claims against only the individual defendants. (*See* Dkt. No. 29, at 9.) The term "defendants" in this Part thus refers only to Moser, Craig, Gatz, and Cortese, and not to the Village.

States.'" *Finwall v. City of Chicago*, 490 F. Supp. 2d 918, 921 (N.D. Ill. 2007) (quoting 42 U.S.C. § 1983). A claim under § 1983 requires that "(1) the defendant acted under the color of state law or invoked state authority, and (2) deprived the plaintiff of a constitutionally protected right." *Id.*; *see also Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). Here, there is no dispute that the defendants acted under color of state law.

On the second prong, Sandefur argues that the defendants violated both his constitutional right to free speech under the First Amendment, and his right to be free of unreasonable searches and seizures under the Fourth Amendment.[6] The court will evaluate each claim in turn.

A.  First Amendment

Both Sandefur and the defendants agree on the First Amendment framework that should apply in this case. First, they agree that Sandefur's claim involves speech that is protected by the First Amendment. Second, they agree that the Village's decision to allow members of the public to address the Board during its meetings created a designated public forum. *See Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) ("There is no doubt that audience time during Waukegan city council meetings constituted a designated public forum."). A designated public forum is a location or channel of communication that the government makes generally available to the public for expressive activity. *Id.* The government may not exclude speech from designated public forums on the basis of content unless the restriction passes strict scrutiny. *Id.* at 870. The government may, however, "enforce reasonable time, place, and manner restrictions provided they are content neutral, they are narrowly tailored to serve a significant government interest, and ample alternative channels

---

[6] The protections of both the First and Fourth Amendments apply to the states and their political subdivisions through the Fourteenth Amendment. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983); *Ker v. California*, 374 U.S. 23, 30 (1963).

of communication exist." *Surita*, 665 F.3d at 870.

Sandefur and the defendants also agree that the decision to exclude Sandefur from the Board meeting was content neutral.[7] Accordingly, the court must determine whether the defendants' actions are narrowly tailored to serve a significant government interest, and whether there are sufficient alternative channels of communication.

        1.        Narrowly Tailored to Serve a Significant Government Interest

The determination of whether the Village's restriction on Sandefur's speech was narrowly tailored to serve a significant government interest is a legal rather than a factual question. *See Mesa v. White*, 197 F.3d 1041, 1046 & n.5 (10th Cir. 1999); *White House Vigil for the ERA Comm. v. Clark*, 746 F.2d 1518, 1528-29 (D.C. Cir. 1984). It is thus appropriate for resolution on summary

---

[7] Or, at least, Sandefur has waived any objection to that conclusion. Sandefur's response to defendants' motion for summary judgment states cursorily that "[d]efendants fail to satisfy" the requirement of showing that the restriction was content neutral, but provides no argument in support of that contention and proceeds to apply the law applicable to content-neutral regulations. (Dkt. No. 78, at 3.) Accordingly, the argument is waived. *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ("We have repeatedly held that undeveloped arguments are considered waived."). Moreover, Sandefur's briefing in support of his motion for summary judgment does not contend that the restriction was content based. (*See* Dkt. Nos. 71, 83.) Finally, Sandefur admits specifically that Moser decided to prevent Sandefur from returning to the Board meeting because of safety concerns, which are plainly content neutral. (Dkt. No. 80 ¶ D3 ("Plaintiff admits that it was only Moser's own perception that Sandefur was agitated, and that he felt it was not wise or safe to allow Plaintiff to return to the boardroom.").

Even if Sandefur had not waived the argument that the restriction was content based, it would fail, for the restrictions on Sandefur are plainly content neutral. All the available evidence indicates that the restrictions were based on preventing a member of the public from addressing the Board while possessing a potentially dangerous weapon, not on the content of the message or the identity of the speaker. The restriction is thus "'justified without reference to the content of the regulated speech,'" and is therefore content neutral. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation omitted); *see also Marcavage v. City of Chicago*, 659 F.3d 626, 631 (7th Cir. 2011) (affirming district court's ruling on summary judgment that regulation was content neutral because plaintiffs failed to present evidence of hostility to the speaker's message).

judgment when no material underlying facts are in dispute. *See MacDonald v. City of Chicago*, 243 F.3d 1021, 1034 (7th Cir. 2001) (holding on summary judgment that a regulation is narrowly tailored to serve a significant government interest).

It is well-settled that a local government has a significant interest in maintaining order at its meetings. *See Surita*, 665 F.3d at 871 (noting that "if [a speaker's] manner were disruptive, [the presiding officer] could have barred his speech completely"); *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009) ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard."); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("[T]he nature of a Council meeting means that a speaker can become 'disruptive' in ways that would not meet the test of actual breach of the peace."); *Collinson v. Gott*, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring) ("[D]isruption of the orderly conduct of public meetings is indeed one of the 'substantive evils that [government] has a right to prevent.'" (alteration in original) (citation omitted)); *Jones v. Heyman*, 888 F.2d 1328, 1333 (11th Cir. 1989) ("[W]e feel that the mayor certainly had an important interest in confining Jones to the topic at hand and in preventing disruption of the meeting.").

It is also well-established that government has a significant interest in maintaining public safety. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994) ("The State also has a strong interest in ensuring the public safety and order . . . ."); *MacDonald*, 243 F.3d at 1034 ("Chicago Ordinance 10-8-330 promotes a significant government interest, primarily the safety of citizens, and specifically the organized, effective, and safe flow of traffic, including emergency vehicles."). There is thus no doubt that the Village had a significant interest in controlling the environment of its public meetings both to ensure order and to protect attendees and participants.

To determine whether the Village's exclusion of Sandefur from the meeting was narrowly tailored to serve that interest, the court notes that "[i]n 'time, place, or manner' cases, 'narrow tailoring' does not mean that the government must use 'the least restrictive or least intrusive means' to achieve its end." *Milestone v. City of Monroe*, 665 F.3d 774, 784 (7th Cir. 2011). Instead, "the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (alteration in original) (citation and quotation marks removed). Still, the regulation "cannot substantially burden more speech than necessary." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002).

The defendants took two separate actions to restrict Sandefur's First Amendment rights, each of which the court must evaluate separately. First, the court holds that the initial decision of the defendants to remove Sandefur from the Board meeting was narrowly tailored to promote public safety and order. At the time the decision was made, the defendants were unaware that Sandefur was a law enforcement officer, or that he was lawfully in possession of the concealed firearm they observed him carrying.[8] All they knew was that the speaker was armed with a concealed weapon and, in the words of one observer, "very animated." (ASOF ¶ 19.)[9] They had only moments to

---

[8] Even assuming that Lori Kaiser mentioned to the Trustee next to her that Sandefur was a cop, there is no evidence that the defendants heard her or had time to react to her comment. Moreover, even assuming that the defendants also heard her comment, their actions would still be justified given that Sandefur was armed and it would have been imprudent to allow him to remain in the Board meeting even long enough to verify Kaiser's comment. If Sandefur did intend to cause harm, allowing him to remain in the Board meeting after angering him by beginning to escort him out would be highly dangerous. The parties' dispute over Kaiser's precise words and who heard them is thus not material.

[9] Sandefur repeatedly insists that he was in full compliance with the Village's rules of decorum during his presentation. (Dkt. No. 72 ¶ 11.) For support, he cites Moser's deposition in which Moser agreed that "Mr. Sandefur was at all times in compliance" with the Village's rules of decorum. (Dkt. No. 59, at 42:14-16.) Moser immediately clarified his comment by stating that "I

determine whether Sandefur posed a threat and to decide on a course of action.

In that situation, the defendants' actions plainly promoted public safety by eliminating any risk that Sandefur would become violent and harm those at the meeting. The defendants perhaps could have achieved the same end by first attempting to ascertain whether Sandefur had a right to carry the weapon, but doing so would have delayed their action to secure public safety and could have warned Sandefur that they were aware of his gun, thus perhaps precipitating an attack if he had intended violence. Their decision to remove Sandefur from the meeting was thus narrowly tailored to protect public safety and maintain order at the meeting.

Second, the court must evaluate the defendants' decision, several minutes later, to prevent Sandefur from returning to the meeting. By that point, Sandefur had told Moser that he was a law enforcement officer, and Moser had examined Sandefur's credentials. Any concern that Sandefur was illegally carrying a gun was thus allayed. Nonetheless, there were still significant reasons to prevent Sandefur from returning to the meeting. First, while out in the hallway, Sandefur was "a bit loud" (Dkt. No. 80 ¶ D8) and Moser judged that he was "agitated." (*Id.* ¶ D3). Even viewing the facts in the light most favorable to Sandefur, those facts legitimately raised the defendants' concern that Sandefur would act in a disruptive manner if he returned to the meeting. Second, all of the attendees and participants of the Board meeting had seen Sandefur unexpectedly removed from the room, some had observed his weapon, and all were aware that he was armed. (ASOF ¶ 36.) Allowing Sandefur to return to the meeting with his weapon still in his possession at that point could

---

would qualify that with when he was observed with a gun and we didn't know who he was, yes, it was upsetting and decorum was disrupted." (*Id.* at 42:23-43:3.) Even accepting the fact that Sandefur was at all times in compliance with the rules of decorum, the defendants removed him from the meeting because of safety concerns, not because of a breach of decorum. The parties' dispute over whether Sandefur observed decorum is thus not material.

have caused those present some concern for their own safety, thus potentially leading to further disruption of the meeting. The defendants undoubtedly could have handled the situation differently, perhaps by allowing Sandefur to return if he agreed to do so without his weapon. Again, however, the defendants need not promote the government's significant interest in a way that impinges least on Sandefur's speech. They need only ensure that their restriction on speech promoted a government interest that would be achieved less effectively without the regulation. Considering the undisputed material facts, preventing Sandefur from returning to the meeting that evening was a reasonable response to the situation and the only way to guarantee no disruption to the meetings' proceedings. The defendants' action was thus narrowly tailored to achieve safety and order at the meeting.[10]

2. Availability of Sufficient Alternative Channels of Communication

The availability of sufficient alternative channels of communication is also a legal question suitable for determination on summary judgment when there are no genuine disputes of material fact. *See MacDonald*, 243 F.3d at 1034. Here, the potential alternative avenues are ample. First, Moser plainly told Sandefur that he could return to the next Board meeting in two weeks to address the Board. Sandefur insists that the delay in communicating his message would have been prejudicial, but an alternative channel of communication does not have to be "preferred" by the

---

[10] Even if the defendants' conduct was not narrowly tailored to promote public safety and order at the meeting, it was at least a reasonable error for the defendants to think that it was, and qualified immunity "protects public employees who make reasonable errors in applying even clearly established law." *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011). Given the short time the defendants had to make a decision and the significant consequences if Sandefur caused a disruption with his firearm, the defendants' actions were reasonable. The law should not overly scrutinize the discretionary decisions of public officials attempting to conduct safe and orderly public meetings. *See Collinson*, 895 F.2d at 1004 (Phillips, J., concurring) ("It is hard to imagine circumstances in which the tolerance commanded by immunity doctrine for possible mistakes of judgment by public officials is more appropriate and necessary than those confronted by officials presiding over potentially explosive public hearings."). The defendants are therefore entitled to qualified immunity.

speaker. *Marcavage*, 659 F.3d at 631 ("[T]he fact that the permissible locations were not the plaintiffs' preferred venues does not render them inadequate" for "the First Amendment 'does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.'" (citation omitted)). If Sandefur desired to communicate to the Board before the next meeting, moreover, he could easily have written the Board members a letter or e-mail. Accordingly, sufficient alternative channels of communication were available.

          3.          The Defendants' Authority

To this point, the court has spoken of the defendants collectively because any distinction in the roles each defendant played has not been relevant to the analysis. One of Sandefur's arguments, however, requires the court to address the authority of each individual defendant to take the actions he did. Specifically, Sandefur contends that Moser lacked the authority to ban a member of the public from a Village Board meeting, and that Cortese and Gatz therefore should not have followed Moser's direction to prevent Sandefur from returning to the Board meeting. In support, Sandefur points to
Rule 19(F) of the Village of Hanover Park Village Board Rules, which provides that "[t]he President may have any person other than a Trustee who interferes with the orderly conduct of the meeting or who persists in disorderly, disruptive conduct removed from the meeting and may call on any officer of the Police Department for assistance." (Dkt. No. 67, at 17.) Sandefur infers from that provision that only the president can remove a member of the public from a Board meeting because of disorderly conduct, and that Moser thus lacked this authority.

In response, the defendants contend that the grant of authority to the president does not mean that the president is the only person with that authority. Moreover, they contend that, in any case,

President Craig ratified Moser's actions when Moser reported that Sandefur had been removed and Craig did not reverse his action.

Sandefur's argument is more simply resolved, however, by two provisions of the Village's Code of Ordinances, both of which the parties ignore. The court will take notice of them, however, because courts frequently determine the authority of municipal officials as a matter of law by reference to local ordinances. *See Davis v. Ockomon*, 668 F.3d 473, 478 (7th Cir. 2012) ("[W]e focus our attention on the City ordinances in effect at the time of Davis's termination, which define by law the duties of [a city official]."); *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir.1999) ("Because [plaintiff's] position . . . was clearly defined by state statute and city ordinance, we find that the district court's determination as a matter of law of the policymaking status of [plaintiff's] position was proper.").

The first provision provides that "[i]t shall be unlawful for any person to disturb any meeting of the board of trustees or of any committee thereof." Village of Hanover Park, Ill., Code of Ordinances § 2-93. The second provides that "[t]he powers and duties of the village manager shall be as follows: (1) To enforce the laws and ordinances within the village . . . ." *Id.* § 2-179.

Under those two provisions, Moser, as the village manager, plainly had the authority to enforce the Village's prohibition on disruption of Village Board meetings. Moreover, Moser also had the authority to command the Village police officers when undertaking that task, for "[t]he village manager shall be the administrative head of the village government, and he shall be responsible for the efficient administration of all departments." *Id.* Moser thus had adequate authority to take the actions he did, and Gatz and Cortese were correct to follow his lead.

Aside from Moser's technical authority, Sandefur's argument fails for a practical reason.

Village President Craig, who was presiding over the meeting, did not notice Sandefur's firearm. Moser and the officers who removed Sandefur chose to act themselves, rather than interrupting the meeting to notify Craig of the danger. That decision was justified, both to ensure that the meeting continued smoothly and because security concerns justified them in acting immediately rather than allowing a threat to continue while they informed Craig. Accordingly, Sandefur's contention that Moser lacked the authority to exclude him from the Village Board meeting fails. The defendants are entitled to summary judgment on Sandefur's First Amendment claims.

      B.      Fourth Amendment Search and Seizure

The Fourth Amendment prohibits the government from engaging in unreasonable searches and seizures. Here, both parties agree that the defendants' search and seizure of Sandefur should be evaluated under *Terry v. Ohio*, 392 U.S. 1 (1968), which "authorizes a brief investigatory detention of an individual whom the police reasonably suspect, based on specific and articulable facts, of engaging in criminal activity." *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). "Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). The court must evaluate reasonable suspicion "in light of the totality of the circumstances known to the officer," and "certain 'behavior may give rise to reasonable suspicion when viewed in the context of other factors at play.'" *Id.* at 824 (citation omitted). Finally, "[q]ualified immunity protects those officers who make a reasonable error in determining whether there is reasonable suspicion to conduct a *Terry* stop." *Id.* at 823 n.4.

Here, the court finds it significant that the stop took place in the context of a Village Board meeting. The situation is thus somewhat different from a typical *Terry* stop of an individual on the

street. In the public setting of a Village Board meeting, the potential consequences of failing to apprehend an individual about to commit a crime are significantly enhanced, for any criminal activity is a threat not only to the order of the meeting, but also to the safety of all present. A stop that would not be justified on the street might therefore be reasonable in the setting and circumstances of a public meeting.

With that backdrop, the court determines that there was reasonable suspicion to seize Sandefur at the meeting, take him to the hallway, and search him. As explained above, the defendants had observed that Sandefur was carrying a concealed weapon, and they were not aware that he was a law enforcement officer. Moreover, Sandefur was very animated as he addressed the Board. The defendants were thus justified in attempting to ascertain whether Sandefur was legitimately carrying the weapon. Moreover, the search was minimally intrusive, for it lasted no longer than necessary to ascertain that Sandefur was a law enforcement officer and involved only as much force as necessary to secure Sandefur and prevent any potential harm to the attendees of the meeting. Within only a few minutes of the commencement of the search, Sandefur was free to leave.

Finally, even if the defendants wrongly determined that there was reasonable suspicion to stop Sandefur, the defendants' error was certainly reasonable and the defendants are entitled to qualified immunity. The defendants had only a short time in which to decide on a course of action. They made a judgment call in light of the need to protect the attendees of the meeting which was reasonable under the circumstances. The defendants are entitled to summary judgment on Sandefur's Fourth Amendment claims.

II.     Count II: Municipal or Supervisory Liability

Because the court has held that there was no violation of Sandefur's constitutional rights, there is no basis for the municipal liability of the Village or for the supervisory liability of Craig or Moser. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011); *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). The Village, Craig, and Moser are entitled to summary judgment on Sandefur's claims for municipal and supervisory liability.

III.    Count III: State Law False Light Claims

To prove a claim for false light invasion of privacy, the plaintiff must show "(1) the defendant's actions placed the plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Duncan v. Peterson*, 835 N.E.2d 411, 422-23 (Ill. App. Ct. 2005); *see also Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209 (Ill. 1992).

Sandefur asserts that Moser portrayed him in a false light both in his comments to the Board after removing Sandefur, *see supra* note 3, and in his comments to the *Daily Herald.* As the defendants contend, however, there is no evidence that anything Moser said in either situation was false. Moser told the Board that Sandefur had a badge and a gun, and that the police were checking into his identity to see if he was indeed a correctional officer, as his badge suggested. Those comments were true. Moser told the *Daily Herald* only that he had decided to bar Sandefur from the meeting because of the disturbance he caused, and that the police handled the situation well. The first comment was true. The second is an opinion, and thus not actionable. *See Brennan v. Kadner*, 814 N.E.2d 951, 959 (Ill. App. Ct. 2004).

Sandefur contends that, in addition to Moser's comments, he was placed in a false light merely because he was not allowed to return to the Board meeting that evening to continue his presentation, whereas Lussky did return. According to Sandefur, his failure to return to the meeting falsely implied to those present that he had done something wrong. Sandefur's argument, however, is mere speculation. His failure to return to the meeting could imply any number of things, including what actually occurred: that the defendants barred Sandefur from returning to the Board meeting that evening after judging that allowing him to return with his weapon would create a safety risk. Accordingly, Sandefur has failed to establish the existence of a genuine dispute of material fact, and the defendants are entitled to summary judgment as a matter of law on Sandefur's false light claim.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment (Dkt. No. 53) is granted, and Sandefur's motion for summary judgment (Dkt. No. 70) is denied. The defendants' "Motion to Strike Plaintiff's Reply to Defendants' Response to Sandefur's 'Statement of Additional Material Facts" (Dkt. No. 88) is granted. The court will enter summary judgment in favor of the defendants on all of Sandefur's claims. Civil case terminated.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 7, 2012